Edward Bowker
vs. } Eq. No. 7969
Howard R. Semple, et als.

July 18, 1929.

BAKER, J. Final hearing.

In this case the complainant is seeking to have a certain sheriff's deed, covering four lots of land with improvements thereon situated in Cranston, declared void. This property formerly belonged to the complainant and prior to the sale, he and others became joint makers of a certain note which was not paid at maturity. Suit on this note was brought by the holder thereof and no question is raised by complainant as to the validity of the judgment or the issuance of the execution under which the sale in question was held. Neither is any claim of fraud made in the pleadings or by the evidence.

It appears that the sheriff's sale in question was held March 6, 1926, the deed being recorded March 20th. The purchaser at the execution sale conveyed to another on May 21st of the same year, and thereafter, through a series of mesne conveyances, the property came into the hands of one Mello by deed dated June 25, 1926. On May 22, 1926, a first mortgage for $3,000 was given on the property by the Old Colony Co-operative Bank, and later a second mortgage for $550 was placed upon the premises by one Berry. The Old Colony Co-operative Bank and one Conroy, a grantee of the property and who was acting in the capacity of agent for one Le Lacheure, intervened and became parties to the case. On or about June 19, 1926, a notice of lis pendens was recorded on behalf of the complainant. It is clear, therefore, that the last conveyance from Berry to Mello, dated June 25, 1926, is not involved in this proceeding, the parties having constructive notice of this claim.

The complainant first urges that the sale by the sheriff should be declared void because he sold four lots of land with improvements thereon en masse to satisfy the judgment claim of a few hundred dollars.

The Court has unquestionably held that an officer of the State selling property has duties to perform to the debtor as well as to the creditor. He must not allow his acts in making the sale to be a means of abuse or oppression.

*Aldrich* vs. *Wilcox*, 10 R. I. 405.

In this particular case, however, there is no clear testimony on the part of the complainant showing that the property could have been divided or that the lots could have been sold separately and the Court is not informed as to the location on the premises of the improvements. After careful consideration, the Court is of the opinion that in this matter the officer acted reasonably under all the circumstances and that the deed should not be declared void on this ground.

The complainant next contends that the notices of the sale were improperly posted. The law calls for a posting in three public places. The testimony shows that one notice was placed in a store in Knightsville in Cranston and the other two notices were placed in the City Hall in Cranston, not far from said store, one notice being downstairs in the city clerk's office and the other upstairs just outside the room used by the Eighth District Court. All three of these postings were at a considerable distance from the complainant's property.

In this matter the statutes of other States are not particularly helpful because they are differently worded and have been differently construed by the various Courts. It seems clear that the

sheriff has considerable discretion in selecting the places in which to post as long as they are public places.

23 Corpus Juris 838.

Further, the fact, as appears in the case at bar, that postings have been made in the same general manner for a considerable period of years should, in the judgment of the Court, be given some consideration. The object of the posting is, of course, to give notice of the sale.

*Horton* vs. *Bassett*, 16 R. I. 419.

The Court is of the opinion that it might have been better judgment to post one of these notices in the neighborhood of the complainant's property rather than to place two of them in the City Hall. At the same time, it should be borne in mind that notices of this type can not well be placed out of doors owing to weather conditions and it is not always easy to obtain permission to post in buildings. As far as the store in Knightsville is concerned, the Court believes this to be a, public place within the meaning of the statute. The evidence showed that many persons entered the store every day, that the notices were looked at and that for many years the sheriff's office had used this place for posting.

See *Wilcox* vs. *Emerson*, 10 R. I. 270.

After due consideration the Court also finds that the posting in the City Hall was proper. The notices were in places where different types of business were transacted and where large numbers of people were likely to go or to congregate. The Court is of the opinion, therefore, that the deed in question is not void by reason of the manner in which the notices relating to the sale were posted.

.. The complainant also argues that the property was sold for such a grossly inadequate consideration as to be unconscionable. It appears from the evidence that the property was bought for $1 at the execution sale by one representing the judgment creditor.

The assessed value in 1925 was $1,240 and from testimony introduced at the hearing it would appear that the actual market value of the property was between $4,000 and $4,500. It is unquestionably the law that in sales of this type mere inadequacy of price alone is not sufficient to render the sale void or to set the deed aside. It is equally well settled, however, that if any other extenuating facts or circumstances are combined with the gross inadequacy of price, then the Court will act to give the complainant relief.

*Boiani* vs. *Wilson & Pettey*, 47 R. I. 317;

*McKenney* vs. *Burney, et al.*, 143 Atl. 778.

In this particular case there can be no question made as to the gross inadequacy of the consideration and there are, perhaps, certain other facts which properly could be taken into consideration in giving the complainant relief. He was a man over 70 years of age, not particularly well educated or versed in business matters. He signed the note upon which the judgment was obtained as an accommodation for another, he himself receiving nothing from the proceeds of the note. If the property was now in the hands of the purchaser at the execution sale or the first two grantees from him—who in the opinion of the Court can not properly be called bona fide purchasers for value without notice because they clearly purchased the property as a speculation and with a certain amount of notice of the situation—then the Court might be in a position to aid the complainant, but, unfortunately for him, the case as developed by the evidence does not rest here.

The respondents Conroy and the Old Colony Co-operative Bank are certainly purchasers for value and, unless the mere fact of the recording of the sheriff's sale showing a consideration of $1 could be construed as notice, it would seem to the Court that they

stand in the position of bona fide purchasers without notice of any equity in the complainant.

Further, a consideration of the evidence in the case reveals that the complainant's situation is largely of his own making. This, in the opinion of the Court, is the most difficult point for him to overcome. He claims that he received no notice of the sheriff's sale until shortly before he consulted his attorney, which obviously must have been about the middle of June, 1926, because the notice of lis pendens was filed the 19th of that month. There is in the record, however, overwhelming evidence which the Court feels makes it clear that he knew about the sale at least as early as March 21, 1926. In the first place he states, under oath, in his original and amended bills, that on or about this latter date he knew of the sale. There is also the testimony of the purchaser at the execution sale and the latter's stenographer, who testified to sending the complainant a letter under date of March 20th, a copy of which was placed in evidence. In addition, there is the testimony relating to the visit of Mrs. Smith on March 22nd to the office of the attorney for the judgment creditor; and, finally, there is the testimony of the complainant's own son as to his receipt of letters and notices and to complainant's anger at himself receiving letters and notices regarding this claim and, apparently, of the sale in question, the evidence showing that the father and the son lived near each other.

It would appear, therefore, that the complainant did not take steps to recover his property until more than three months after the sale in question had taken place. In the mean time, the purchaser at the execution sale had waited approximately two months for the complainant to act before he made his first conveyance. Under these conditions, it seems to the Court clear that the complainant is guilty of such

laches as would estop him from now obtaining relief at the expense of those who afterwards acted in good faith and brought about a change in their position in relation to the property. As a general thing where contesting parties each have equities, the Court will usually leave the situation substantially as it finds it. Further, in view of the fact that the complainant has by his delay brought about the present situation, it is he who must suffer such loss as there may be.

See *Hatton* vs. *Howard Braiding Co.*, 47 R. I. 47.

It seems to the Court quite obvious that the complainant's indifference and stubbornness—as shown by the attitude he took when discussing with the attorney for the judgment creditor the matter of the sale of his property, particularly with reference to the fact that his property could not be sold unless he executed the deed—are the chief causes of the unfortunate position he now finds himself in.

Berry and Goldberg did not enter any appearance in this matter, and a consideration of the testimony leads the Court to believe that the conveyance by Conroy to Berry and the giving of the second mortgage by the latter, and the transfer of the mortgage to Goldberg were as a matter of fact all substantially part of the transaction in which Conroy took title to the property and in which the Old Colony Cooperative Bank issued its first mortgage. Apparently in the sale from Conroy to Berry no actual cash consideration was passed in addition to the said second mortgage for $550.

In his bills the complainant has not suggested the assuming or discharging of the mortgage of the Old Colony Co-operative Bank. In view of the fact, however, that there may be some equity in the property over and above the mortgage which, perhaps, in fairness ought to be preserved for the complainant, if possible, the Court is of

the opinion that if he is willing to assume said mortgage and all that may be due thereon and reimburse the respondent Conroy and his principal La Lacheure for whatever moneys they may have expended in the transaction, then he should be granted the relief prayed for in his bill; otherwise, his bill should be dismissed.

For complainant: Edward M. Sullivan & John J. Sullivan.

For respondents: Comstock & Canning, Harold R. Semple, Green, Curran & Hart.